Van Voobhis, J. (dissenting).
In denying temporary injunctions to distillers seeking to compel retail liquor stores to fair trade under the Feld-Crawford Act on some 16 different applications, the various Special Terms were following a sure instinct that the power to fair trade liquor had been affected by the 1964 amendments to the Alcoholic Beverage Control Law. This is illustrated by the memorandum opinion of Mr. Justice Hofstadteb herein: ‘ ‘ Motions numbers 116, 118 and 129, argued together, are disposed of as follows: All three motions for preliminary injunctions are denied, without prejudice to renewal after a final determination of the issues raised in Joseph E. Seagram & Sons, Inc., et al. v. Donald S. Hostetter et al., now pending in the Supreme Court of the State of New York, Albany County.”
Now that that appeal has been decided against Seagrams and in favor of the Liquor Authority (16 N Y 2d 47), upholding the constitutionality of the 1964 legislation, there is something wrong with the picture presented on this appeal which confronts us with a victory in this action for the distillers. It was evidently the thought of Justice Hofstadteb, as of the other nisi prius Justices who made similar rulings in other cases, that the power to issue Feld-Crawford injunctions might be affected by whether the constitutionality of the 1964 legislation were to be sustained. Although, to be sure, the constitutionality is to be reviewed by the United States Supreme Court, the circumstance is not altered that it has been upheld by the New York Court of Appeals, and that the law at present is that the brand price clause is valid, mandating matching minimum wholesale brand prices in other States. Regardless of the stay granted by Mr. Justice Hablan, pending decision by the United States Supreme Court, which saves distillers from penalties for non-filing of these schedules by a date not yet set by the State Liquor Authority, the stay is irrelevant when it comes to the invocation of the powers of a court of equity by the distillers to enforce fair trade upon retailers in New York State in a manner designed to thwart the expressed purpose of the Legislature in enacting the 1964 statute. The stay is a shield to the distillers pendente lite, but they may not use it as a sword to destroy the public policy of the State as determined by the Legislature.
*18 This issue, tendered by this appeal, seems not to have been presented in National Distillers & Chem. Corp. v. Macy & Co. (23 A D 2d 51), on the authority of which this appeal was decided by the Appellate Division. This appeal is concerned entirely with the equitable principle that plaintiff should be denied an injunction for the reason that it lacks equitable standing to obtain affirmative equitable relief (De Candido v. Young Stars, 10 A D 2d 922). "Where, as here, the object in seeking an injunction is to thwart the avowed policy of the Legislature by frustrating the purpose intended under cover of a restraining order in another and different action so as to beat the Legislature and the State Liquor Authority to the draw, the inequitable status of the plaintiff is directly related to the matter in issue (Weiss v. Mayflower Doughnut Corp., 1 N Y 2d 310, 316).
It is established by affidavit of defendant-appellant’s president, not contradicted by plaintiff, that during the period in question between October 1964 and March 1965 plaintiff has sold Bellows Partners Choice and Old Crow whiskey to retailers in Washington, D. C., and elsewhere in the United States at prices lower than those charged defendant in this action. This is not hard to believe, inasmuch as it is well known that New York State liquor prices are higher than anywhere else in the Nation. That is why it was enacted by chapter 531 of the Laws of 1964 that no brand of liquor or wine should be sold to retailors at higher prices ‘ ‘ than the lowest price at which such item of liquor was sold by such brand owner [or] such wholesaler * * * to any retailer anywhere in any other state of the United States or in the District of Columbia ’ ’. That provision in section 101-b has been held by this court to be constitutional in Seagram & Sons v. Hostetter (16 N Y 2d 47, supra), and it expressly affirms that a fundamental purpose of the Legislature in enacting section 101-b was to reduce the prices charged to the consumer.
Two reasons are adduced, insofar as we understand, on account of which it is argued that this statutory provision does not preclude the maintenance of a Feld-Crawford injunction suit to compel retailers to sell branded wines and liquors at higher prices than was contemplated by the Legislature. The first of these reasons is that on account of the stay granted pending *19 review of the Seagram’s ease by the United States Supreme Court, it has not yet become obligatory upon distillers to file schedules of prices in other States, that it is from such schedules that the minimum prices charged to and by wholesalers in other States is to be determined, and that, in their absence, this aspect of section 101-b of the Alcoholic Beverage Control Law is totally without force or effect. The second reason is that inasmuch as the price ceiling to be obtained from minimum prices charged in other States applies to sales to wholesalers and by wholesalers to retailers, it can have no force or effect in preventing distillers from keeping up the price by retailers to the public through Feld-Crawford agreements to the same extent as though the minimum wholesale price provisions in section 101-b had not been enacted. The conclusion which the distillers ask us to draw is, apparently, that the Feld-Crawford Act can be utilized so as to prevent the public from gaining a price advantage from this legislation by giving the advantage entirely to the retailer. This is so manifestly contrary to what the Legislature intended as to be refuted by merely stating the contention.
The declaration of policy contained in this statute itself (L. 1964, ch. 531) states that it is the firm intention of the Legislature “ that consumers of alcoholic beverages in this state should not be discriminated against or disadvantaged by paying unjustifiably higher prices for brands of liquor than are paid by consumers in other states, and that price discrimination and favoritism are contrary to the best interest and welfare of the people of this state, and * * * that enactment of section eleven of this act will provide a basis for eliminating such discrimination against and disadvantage of consumers in this state. In order to forestall possible monopolistic and anti-competitive practices designed to frustrate the elimination of such discrimination and disadvantage, it is thereby further declared that the sale of liquor should be subjected to certain further restrictions, prohibitions and regulations, and the necessity for the enactment of the provisions of section nine of this act [adding pars, (d) to (k) to subd. 3 of this section] is, therefore, declared as a matter of legislative determination.”
'Section 9 contains the provisions of this act which provide for prices to retailers by wholesalers no higher than the lowest *20 price in any other State. Certainly the Legislature contemplated that this would affect the price to the consumer. It could not have been the legislative purpose to render that result nugatory by permitting fair trade agreements at prices unaffected by these provisions. The Legislature contemplated that by depressing the prices of wholesalers to retailers, the retail prices to the public would thereby be reduced so as not, in the language of the statute, to discriminate against the consumer.
Although the schedules provided by 101-b are not compelled to be filed on account of the stay pending review by the United States Supreme Court, this does not impair the present validity of the statutory enactment in New York State that wholesale prices here shall not be higher than elsewhere. That is the public policy of the State as proclaimed by the Legislature and upheld by the Court of Appeals. There is nothing in the stay to prevent the filing of such schedules, and certainly nothing in the stay to enable distillers to take affirmative action to compel, contrary to the manifested policy of the Legislature, the retail sales at prices which take no account of the price reduction provisions in 101-b of the act of 1964, with the consequence that a court of equity ought not to be open to distillers giving them injunctive relief contrary to the public policy of the State as proclaimed by the Legislature. This does not mean that the voluntary Feld-Crawford provisions were entirely repealed by the 1964 legislation. But if that legislation has any meaning, as we must assume that it does have, then the prices to be fixed by liquor injunctions cannot be set at higher figures than those which would result in the normal course of business from the application of the price reduction provisions of that legislation. Plaintiff here has made no attempt to show what the effect of those provisions would be upon retailers in the normal course of trade but, on the contrary, have sought to evade and escape from their effect in order, if possible, to nullify the legislation. The contention of plaintiff is unsound that even if the United States Supreme Court upholds the constitutionality of section 101-b, and schedules of wholesale prices in other States are filed by distillers with the State Liquor Authority, the high level of retail prices to consumers in New York State can be kept up by legal compulsion by means of Feld-'C'rawford agreements so as to prevent them from being *21 affected in the normal course of business by the reductions in wholesale prices compelled by the 1964 statute. If that were true, it would give the legislative price advantages to the retailer instead of to the consumer.
There should, in any event, be a trial in order to determine what effect the price reduction provisions of the 1964 legislation would have upon the trade, before equity lends its aid to rendering those provisions of no effect.
A few words may be in order about our jurisdiction. It is said that the grant or denial of a temporary injunction lies in the discretion of the Supreme Court.
In our opinion the Appellate Division erred as a matter of law in granting an injunction pendente lite without so much as considering what effect the price reduction provisions of the 1964 legislation would have in the normal course of business upon retail liquor prices in this State. Feld-Crawf ord injunctive relief is not wholly forbidden by the 1964 legislation, but it is necessarily conditioned and qualified so as not to conflict with its underlying provisions.
Second, although the denial of such relief might be in the discretion of the Supreme Court, subject to more limited review in the Court of Appeals, this rule does not apply where, as here, the injunctive relief was granted (Bachman v. Harrington, 184 N. Y. 458; McHenry v. Jewett, 90 N. Y. 58; Cohen and Karger, Powers of the New York Court of Appeals, § 157).
Moreover, in discussing review of discretion, Cohen and Karger explain the several meanings of discretion and correctly say that the Court of Appeals exercises jurisdiction in cases involving conflict between natural justice and positive law (§ 146). If what Cohen and Karger say were not so, the Court of Appeals would be deprived of power of review in most cases involving equitable jurisdiction. When it is said that we usually review questions of law only, that does not exclude principles of equity, even though “ The granting of the equitable remedy is, in the language ordinarily used, a matter of discretion, not of an arbitrary, capricious discretion, but of a sound judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case.” (4 Pomeroy, Equity Jurisprudence [5th ed.], § 1404.) The latter textwriter continues, speaking, in particular, *22 of the equitable remedy of specific performance, by saying that ‘ ‘ The term ‘ discretionary ’ as thus used is, in my opinion, misleading and inaccurate. The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions, and incidents, which equity regards as essential to the administration of all its peculiar modes of relief. When all these elements, conditions, and incidents exist, the remedial right is perfect in equity.” The limitations of our jurisdiction to questions of law do not mean that we are divested of powers of review in the field of equitable jurisdiction.
In our view the order appealed from should be reversed, and the plaintiff-respondent’s application for a preliminary injunction denied.
Judges Fuld, Burke and Soileppi concur with Chief Judge Desmond; Judge Van Voorhis dissents in an opinion in which Judges Bergan and Keating concur.
Order affirmed, etc.